**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| v. | ) | **Criminal No. 21-CR-10001-NMG** |
| | ) | |
| **NEAL GRUBERT,** | ) | |
| Defendant. | ) | |

## GOVERNMENT'S SENTENCING MEMORANDUM

Using the internet, then-32-year-old Neal Grubert ("defendant" or "Grubert") advertised sexual abuse material ("CSAM"), or child pornographic, images and videos on a site on the dark web[1] of which is served as an administrator to an undercover law enforcement agent. The defendant became known to law enforcement during a child exploitation operation involving Swedish law enforcement, who had identified a Swedish citizen producing images and videos of himself sexually abusing his three-year-old niece (hereinafter, "Minor A") and distributing these images and videos of the sexual abuse to other likeminded individuals on platforms including a site on the dark web (Website A)[2] dedicated to the sexual exploitation of children, which the defendant was a staff member.

---

[1] The dark web is comprised of a variety of networks, such as Tor, that exist on a portion of the internet accessible only through specific software, such as the Tor browser (a legal and publicly available free application). One of the key features of dark web networks like Tor is the anonymity it offers both users of the network and individuals or entities that host sites on the network, which are also referred to as hidden services. Website A is a Tor hidden service dedicated to the sexual exploitation of children. The true name of Website A is known to law enforcement but redacted here in order to protect the integrity of ongoing international investigation into the users of the site.

[2] The suspect also admitted to using a particular username on Website A and other child exploitation sites on the dark web. That name is known to law enforcement but redacted here to protect the integrity of ongoing international investigation into other users of Website A who may be familiar with this particular user.

Undercover law enforcement agents observed the defendant post thousands of messages on Website A, which included uploading images and/or videos of CSAM. Website A advertised child pornography and included a section dedicated to the sexual abuse of boys and girls under five years old, a section with "no limits" (allowing material depicting death, gore, BDSM, hurtcore, and bestiality), a section for fantasy/role play, and a section "honoring the love of children" between the ages of five and 15. Advertising child pornography is not a victimless crime. Real children have been victimized because of the defendant's criminal actions. The facts of this case are serious and call out for a significant sentence.

The parties have entered into a plea agreement entered into pursuant to Fed. R. Crim. P. 11(c)(1)(C). In it, the parties jointly recommend a period of 180 months incarceration; a mandatory minimum period of 5 years of supervised release; a mandatory special assessment of $100; an additional special assessment of $5,000 pursuant to 18 U.S.C. § 3014(a)(3) (the "JVTA assessment" for each count unless the Court determines the defendant is indigent; a special assessment of up to $50,000, pursuant to 18 U.S.C. § 2259A (the "AVAA assessment"), unless the Court determines the defendant is indigent; restitution to be determined at or following the date of sentencing;[3] forfeiture as set forth in paragraph 7 of the plea agreement; and a fine within the Guidelines range as calculated by the parties in the plea agreement, excluding departures,

_____

[3] Pursuant to 18 U.S.C. § 3663A, restitution is mandatory in this case. After the date of the rule 11 hearing, the government received and provided defense counsel and U.S. Probation with documentation relative to restitution requests submitted on behalf of the following individuals "Vicky (Lily). The government is awaiting a response from defense as to final figures for the restitution for the other identified victims. Should the parties not have final restitution figures by the sentencing date, the government would request a further date for a restitution hearing within 90 days of the sentencing date. *See* 18 U.S.C. § 3664(d)(5).

unless the Court finds that defendant is not able, and is not likely to become able, to pay a fine. Further, pursuant to the Sex Offender Registration and Notification Act and the laws of the Commonwealth of Massachusetts, the defendant is required to register as a sex offender following his incarceration and to keep that registration current.  The government argues such a sentence is fair, reasonable, appropriate and warranted in this case and comports with the factors outlined in 18 U.S.C. § 3553(a).

## I.       SENTENCING GUIDELINES/GUIDELINE CALCULATIONS

### A.       Legal Framework

The advisory United States Sentencing Guidelines ("Guidelines" or "USSG") are "the starting point and the initial benchmark" in sentencing.  *Gall v. United States,* 552 U.S. 38, 49-50 (2007).  The Guidelines must be properly calculated and considered, but ultimately the Court must craft a sentence that sufficiently accounts for the sentencing factors and objectives outlined in 18 U.S.C. § 3553(a).  *Id*. at 49-50.  Because each case is unique, the Court must make a particularized analysis of the nature and circumstances of the offense and the defendant's history and characteristics. *See* 18 U.S.C. § 3553(a)(1).  The Court must then impose a sentence that sufficiently reflects the seriousness of the crime, promotes respect for the law, and provides just punishment, and the sentence should adequately deter criminal conduct, protect the public, and provide any necessary education, training or treatment.  *See* 18 U.S.C. §§ 3553(a)(2)(A)-(D). The Court must also strive to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct.  *See* 18 U.S.C. § 3553(a)(6). After determining the appropriate sentence, the Court should adequately explain its rationale to "allow for meaningful appellate review and to promote the perception of fair sentencing."  *See Gall*, 552 U.S. at 50*.*

**B.      Procedural History/U.S.S.G. Calculations**

On January 5, 2021, a one-count indictment charging the defendant, with Advertising Child Pornography, in violation of 18 U.S.C. § 2251(d) and (e), was returned.  On July 12, 2023, the defendant pled guilty to the one-count indictment.  The defendant faces a statutory maximum sentence of twenty years on his conviction for Distribution of Child Pornography with a 5 year mandatory minimum sentence. He faces a statutory maximum of 30 years on the Advertising Child Pornography conviction.  Additionally, the sentencing guidelines and statutory term of supervised release requires a term of 5 years up to life on this count.  *See* cover sheet of PSR, PSR ¶¶ 73 & 74, and 18 U.S.C. § 3583(k).

 A final Presentence Report ("PSR") was issued by U.S. Probation on October 30, 2023. The PSR determined the adjusted offense level to be 35, after including all relevant sentencing enhancements and grouping principles.  *See* PSR ¶¶ 31-41.  With a three-level reduction for acceptance of responsibility, the total offense level ("TOL") is 32.  *See* PSR ¶¶ 43-45.  Based upon a TOL of 32 and a criminal history category ("CHC") of I, the advisory guidelines sentencing range ("GSR") is 121-151 months, however, the mandatory minimum sentence is 180 months imprisonment.  *See* PSR ¶¶ 71, 72.  The guideline calculations outlined in the PSR which are consistent with the calculations outlined by the parties in the plea agreement.  The parties recommend a sentence of 180 months which is consistent with the mandatory minimum required by statute.

**II.      DISCUSSION OF 18 U.S.C. § 3553 FACTORS**

The government asserts the joint recommendation by the parties accounts for the factors that the Court must consider outlined in 18 U.S.C. § 3553(a).  The factors include, but are not limited to, the nature and circumstances of the offenses, the history and characteristics of the defendant, the seriousness of the offenses, promoting respect for the law, providing just

4

punishment for the offense, the need to deter the defendant and others, the need to protect the public from the defendant's crimes, and the need to avoid unwarranted sentencing disparities.

A.      The Nature and Circumstances of the Offenses

The government urges the Court to consider the nature and circumstances of the offenses, to recognize the seriousness of his crimes, to assess the crimes for what they are, and for the negative impact they have the child victims.  *See* 18 U.S.C. § 3553(a)(1). The facts were outlined at the Rule 11 and are outlined in detail in the PSR and the government outlines the facts herein.  *See* PSR ¶¶ 8-26.

As part of an ongoing child exploitation operation, Swedish law enforcement identified a Swedish citizen who was producing images and videos of himself sexually abusing his three-year-old niece (hereinafter, "Minor A") and distributing these images and videos of the sexual abuse to other likeminded individuals on platforms including a site on the dark web (Website A) dedicated to the sexual exploitation of children. In an interview with Swedish investigators, the suspect confessed to the sexual abuse and rape of Minor A, the production of child exploitation material, and the distribution of child exploitation material on Website A. The suspect was arrested by Swedish law enforcement on May 13, 2020.

In the course of a forensic examination of a cell phone seized in connection with that arrest, investigators found several images and videos depicting the sexual exploitation of children. Included within those images, investigators observed videos that show an adult white male recording himself while masturbating to videos and images of the rape and sexual abuse of Minor A that he was playing on a Samsung cell phone. The videos include audio, which captures the adult white male directly addressing both the Swedish suspect and Minor A in English as he masturbates to the child pornography. Throughout most of the videos the adult white male is speaking while he masturbates. Based on the content of what he says, it appears that he has

regular contact with the Swedish suspect and is familiar with Minor A, to the extent that he knows her name and approximate birthday. In two of these videos, the adult white male's face is visible.

The videos were observed to be organized in a folder nested within another folder (hereinafter, "Folder 1" and "Folder 2"). Most of the file names begin with the word "Signal," which is the name of a messaging application that was found to be installed on the phone. The inclusion of the word "Signal" in the file names suggests that the files were exchanged through the Signal messaging application.

Swedish investigators recognized the name of Folder 1 as the username of an individual whose activity they had observed in previous investigations of Website A (subsequently identified as the defendant and hereinafter, "GRUBERT"). Based on the Swedish investigators' review of posts made to Website A by the GRUBERT as well as the videos he sent to the Swedish suspect, they believed that he was an American.

Forensic review of the Swedish suspect's cell phone revealed only one phone number stored in his contacts starting with the American prefix "+1" ("GRUBERT"). Investigators observed one text message, in English, from GRUBERT. By consulting public databases, investigators determined that the number is owned by Verizon Wireless.

Website A is a Tor hidden service dedicated to the sexual exploitation of children. The true name of Website A is known to law enforcement but redacted here in order to protect the integrity of ongoing international investigation into the users of the site. Website A requires individuals to create a username and password to gain access to the site. New users must choose a unique username; that is, they cannot select a name already in use by another user.

Registered users are limited to one of five sections of the website, until they post at least 500 images or videos of child sexual abuse material, at which point they may gain access to the other four sections of the site. These sections include a section dedicated to the sexual abuse of boys and girls under five years old, a section with "no limits" (allowing material depicting death, gore, BDSM, hurtcore, and bestiality), a section for fantasy/role play, and a section "honoring the love of children" between the ages of five and 15. Certain law enforcement agents, including from HSI Boston, maintain "undercover" user accounts on Website A in order to investigate individuals who produce, advertise, distribute, download, and access with intent to view child pornography on and from the site.

Through the course of ongoing undercover operations, HSI agents and other members of law enforcement around the world have been monitoring several dark web hidden services dedicated to the sexual abuse of children, including Website A.    One such individual that has been observed in the course of such investigations is GRUBERT, who has been observed on Website A since approximately December 2018. Law enforcement involved in such investigations believe that GRUBERT has posted approximately 9,000 messages and has uploaded approximately 3,300 files to Website A during that time period. Since approximately April 2019, GRUBERT was observed posting messages that include instructions and guidance to members and guests on Website A, often instructing other users to ask "staff members" for assistance.

On June 14, 2020 at approximately 9:45 pm (EST) an HSI Boston agent (hereinafter, "the UC") logged into Website A in an undercover capacity. Upon entering the site, the UC could observe that other members of the site were also online, including GRUBERT. The Boston UC noted that GRUBERT'S screen name was underlined, which law enforcement

familiar with Website A knows to signify that the user is a member of Website A staff. Law enforcement familiar with Website A also understand that staff members typically both "check in" when they log in so that other staff members may verify their identity in some manner, as well as greet other members as they log in to the room. When the Boston UC was logged into Website A on June 14, 2020, he observed GRUBERT greeting and interacting with members in this fashion.

At approximately 9:58 pm (EST), GRUBERT posted two links that led to one image of child pornography and one video of child pornography. GRUBERT included a description with the links, which read: "[preteen] [girl] [stripping] A girl on YouTube live "taking a bath" or thats what she said she was just doing..." At some point following this post, GRUBERT commented, "Its not the most HD vid lol but she is a cute kid :D."

The Boston UC executed the links and viewed both files. They are described as follows:

a.      BatingYT23.05.13-orig.flv: This video is approximately 6:51 in length. It depicts a pre-pubescent female who appears to be approximately 10 years old and shows her speaking into the camera and undressing until she is naked. The child then masturbates on camera until the end of the video. Several times during that portion of the video, the camera focuses closely on the child's vagina.

b.      111592185878.jpg: This image is a "preview sheet" of the video titled BatingYT23.05.13-orig.flv; that is, the image consists of sixteen frames, which appear to be screen shots from the video described above, laid out in progression.

On June 3, 2020 HSI issued a summons to Verizon Wireless for subscriber details associated with the SUSPECT NUMBER. The company responded with information including the following:

Subscriber Name:   Neal S Grubert

Address: 1100 County Road 258, Bertram TX, 78605-3738

Home Phone: (the SUSPECT NUMBER)

HSI Boston agents consulted records from the Texas Department of Public Safety, which included driver's license information for GRUBERT. The records listed his year of birth as 1988 and his address as 1100 CR 258, Bertram, TX 78605, and included a driver's license photograph taken on August 8, 2019.

HSI Agents also obtained access to the photograph on file with the State Department associated with the United States Passport currently issued to GRUBERT.

HSI Agents have compared the photographs held by the U.S. State Department and the Texas Department of Public Safety with the images recovered from the Swedish suspect's phone and believed that they depicted the same individual.

In one of those videos, a browser is visible on the computer's screen, and displaying tabs with the names of two known dark web child exploitation sites (one of which is Website A). The tab that displays the name of Website A also displays GRUBERT's name.

Metadata is available for at least one of these videos, titled VID_20190427_130010.mp4 and located within the folder bearing GRUBERT's name. The metadata includes a creation date of 2019:04:27 represents April 27, 2019) and indicated that the device that created the video was a Samsung SM-G900V. The metadata also includes GPS coordinates that represent the location from which the video file was created. Those coordinates are

30.757700 N, 98.105200 W were determined to correspond with 1100 County Road 258, Bertram, Texas, which is GRUBERT's residential address.

**B.     History and Characteristics of the Defendant**

This 35-year-old defendant was raised in a relatively stable family, under stable socio-economic circumstances, had a generally happy childhood, despite alleging being the victim of mental abuse by his parents, it was this arrest that distanced him somewhat from his parents and siblings and not anything else. He has stated he continues to have a steady and supportive relationship with both his parents, even with this arrest.  PSR ¶¶ 54, 55.   The defendant was home schooled by his mother and received his high school diplomas in 2007 and attended at least two colleges.  PSR ¶ 65.  He has been employed as a marketing coordinator at Horseshoe Bay Resort in Horseshoe Bay, Texas for approximately eight years until this arrest terminated his employment. PSR ¶ 66. The defendant was married to Katrina Josephine Thomison ("Thomison"), for two years before they divorced in April 2021. The defendant advised that they were in a happy, healthy relationship for four or five years and it all ended due to this case. Katrina was pregnant with their first child when the defendant was arrested and has since had their daughter; Ellie Thomison, 2, who the defendant has never met. PSR ¶ 57. Certainly, at a surface level the defendant appears to have lived a fairly regular life in the real world away from his online presence.

However, it was in cyberspace where the defendant was most uninhibited, it was in his online world, wrapped in the cloak of anonymity, that his true nature was most visible. As a staff member on several dark web child exploitation websites, and specifically as a staff member on Website A, he promoted the sexual abuse of boys and girls under five years old and spent hours delving into a platform, which advertised CSAM material depicting death, gore, BDSM, hurtcore, and bestiality a section for fantasy/role play, and a section "honoring the love of

children" between the ages of five and 15. PSR ¶ 15. The defendant's online life paints a stark contrast to the image he presents of his home life away from the computer to U.S. Probation.

The defendant discusses his frustration with the lack of access to his daughter, his inability to speak with his ex-wife, and the fact that his family and friends feel uncomfortable because he and his ex-wife are no longer speaking. PSR ¶ 57.  The defendant even unapologetically and seemingly without cause, disclosed to U.S. Probation unsubstantiated information about his ex-wife's mental health during his interview for the PSR. PSR ¶ 57. However, the defendant again presents differently in the real world from the one the Government witnessed during its investigation, and the one the defendant himself conveyed online. The evidence in this case demonstrated that the defendant had access (online) to and regular contact with Minor A, just three years old at the time, during his interactions with the suspect in Sweden. The result of this access and contact with Minor A was that the defendant directed the rape and continued sexual abuse of Minor A while he sexually gratified himself. PSR ¶ ¶ 9 &10.

**C.     The Requested Sentence Is Needed to Reflect the Seriousness of the Offenses, to Promote Respect for the Law, to Provide Just Punishment for the Offenses, Afford Specific and General Deterrence, and to Protect the Public from Future Crimes of the Defendant**

Three victims[4] (one series victim covered under the CVRA, and two non-statutory victims covered under 18 U.S.C. §3661) have submitted impact statements that were previously submitted to U.S. Probation and to defense counsel.[5]  The seriousness of the crimes for which

---

[4] Courts have broad discretion to hear from non-statutory victims at sentencing under 18 U.S.C. §3553(a) and 18 U.S.C. §3661, there are compelling facts proffered in these statements from these individuals such that the statements would be highly relevant to the defendant's background, character, and conduct.

[5] The defendant's child pornography collection contained the following number 1 image of "Vicky." Each of the three victims has submitted a victim impact statement and only series victim "Vicky" is requesting restitution.  U.S. Probation has confirmed that the three victim impact statements were submitted to the Court with the final PSR.

the defendant now stands convicted cannot be underscored or minimized.  He advertised child exploitation material.  He discussed in online forums, which he directed, his desire to sexually abuse children himself. The defendant did so while logged on to exploitation platforms in the darkest recesses of cyberspace and all the while his pregnant wife sat under the same roof planning for the arrival of their unborn child.  He has negatively affected the lives of minor children through his criminal acts.  In examining the seriousness of the offenses, the Court must review the harm to the victims.  *See United States v. Cunningham*, 680 F.Supp 2d at 844, 855 (N.D. Ohio, 2010).  Each time a sexually explicit image or video of a child is viewed, accessed, possessed, received, sent or produced, that minor child is being re-victimized.

The continuing impact of the defendant's crimes had on his victims is reflected in the victim impact statements.  The devastating toll this case has taken on the minor victim of the series he advertised is enormous and best summed up by her victim impact statements.

In her victim impact statement, minor victim Vicky (Lily) wrote, in part:

"I am making this supplement to my prior Victim Impact Statement to make clear that each additional time that another person downloads and sees the computer images that are now known as the "Vicky series" it does me immeasurable additional hard, I am hurt every time I hear about another criminal case that involves my images. With each criminal case that I hear about I know that many more copies of my image are spread around the internet; I know that there is a s lesser and lesser chance that the horror I feel about people seeing me in this way will ever end."

Minor victim, Vicky (Lily) in another impact statement, wrote, in part:

"I live everyday with the horrible knowledge that many people somewhere are watch the most terrifying moments of my life and taking grotesque pleasure in them. I am a victim of the worst kind of exploitation: child porn. Unlike other forms of exploitation, this one is never ending. Everyday, people are trading and sharing videos of me as a little girl being raped in the most sadistic ways. They don't know me, but they have seen every part of me. The are being entertained by my shame and pain."

However, the impact of the defendant's crimes in this case strike at the heart of the community and reach victims closer to his home.  The defendant's own family, who know

him and refer to him by his middle name, "Staton" have courageously reflected on their own

experiences and submitted impact statements; although not statutory victims nor charged

conduct, their words are equally impactful because of their insight into and history with the

defendant.  "In sentencing, a judge may appropriately conduct an inquiry broad in scope, largely

unlimited either to the as to the kind of information he may consider, or the source from which it

may come . . .." *See United States v. Straw*, 616 F. 3d 737 (8th Cir. 2010).

In their impact statement, a family member who wished to be publicly identified only as a
"Concerned Family Member" wrote, in part:

"It took finding out that he was being charged with advertising and distributing
child sexual abuse material and that his location was discovered by law enforcement because of a
video of him pleasuring himself to the abuse of an innocent child for me to stop staying silent.
How he could look at young children in any other way than how normal people do is beyond me.
He has caused our family a lot of pain with his actions and behavior."

In their impact statement, a family member who wished to be publicly identified only as a
"A" wrote, in part:

"The abuse I experienced as a child created a lasting impression on my life. While I'm
not a victim of the crime he's being charged with, his choices and arrest have affected my life
greatly. The trauma I experienced as a child resurfaced resulting in anxiety and panic attacks,
requiring therapy to cope. It's made it hard to trust those around us, family, friends, teachers, and
even strangers. The harm it's caused is endless. It's changed the way we will parent our children
forever. It's been a long 3+ years waiting for this sentencing, an emotional rollercoaster. I know
that the years of his sentence will feel much the same with the looming date of his release over
our heads. While the sentence may be long to some, no amount of time seems long enough to
me. I worry for the safety of my children, my family members' children, as well as the general
public. I implore you to consider all of this information as you decide how best to protect the
public from Staton."

The series victim in this case is not an abstraction or an object—she is a real

person who experienced sexual exploitation and is revictimized when these pictures or images

are advertised, distributed, and possessed.  A significant term of imprisonment reinforces, to the

defendant and to others who are tempted to follow in his footsteps, that these crimes are

exceedingly grave in nature, should act as a deterrent, and would promote respect for the law and

13

to protect the safety of the public, and in particular, children, who are the most vulnerable victims in society. Imposing serious penalties on those who advertise child pornography serves the interests of all the victims in this case. The government suggests the jointly recommended sentence will act as a deterrent to the defendant as well as a general deterrent to others who commit similar crimes. This sentence is also "sufficient, but not greater than necessary," to account for this conduct and to accomplish the goals of § 3553(a). *See* 18 U.S.C. § 3553(a).

III.    **CONCLUSION**

The defendant has victimized and exploited a minor child. The facts of this case are serious. A sentence of 180 months followed by 5 years of supervised release is a significant sentence. The government suggests that the jointly recommended sentence addresses the severity of the defendant's crimes, and is appropriate and reasonable. As such, the government urges this Court to impose it.

Respectfully submitted,

JOSHUA S. LEVY
Acting United States Attorney

By:    */s/ Luke A. Goldworm*
Luke A. Goldworm
Assistant U.S. Attorney

Dated: October 27, 2023

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system and thereby served an electronic copy on counsel for the defendant.

/s/ Luke A. Goldworm
Luke A. Goldworm
Assistant U.S. Attorney