UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES | ) | |
| | ) | DOCKET NO.: 21-cr-10001-NMG |
| v. | ) | |
| | ) | |
| NEAL GRUBERT | ) | |
| | ) | |

**DEFENDANT'S SENTENCING MEMORANDUM**

Neal Grubert, having accepted responsibility and pleaded guilty to a one-count indictment alleging advertising of child pornography, in violation of 18 U.S.C. § 2251(d)(1)(A), submits this sentencing memorandum in support of the parties' joint recommendation for a 15-year (180-month) term of incarceration followed by five years' supervised release. This jointly recommended disposition, consistent with the parties' binding plea agreement pursuant to Fed. R. Crim. P. 11(c)(1)(C),[1] represents an above-guideline sentence, adequately reflects the seriousness of the offense before the Court, and balances the need to punish with other properly considered sentencing factors. This jointly-recommended sentence – which involves not just a very lengthy sentence of imprisonment, but mandatory restitution,[2] onerous registration obligations and significant monitoring by United States Probation – is consistent with the factors set forth in 18 U.S.C. § 3553(a) and will result in a sentence that is sufficient, but not greater than necessary, to effectuate the purposes of sentencing. *United States v. Kimbrough*, 552 U.S. 85 (2007); *United States v. Booker*, 543 U.S. 220 (2005); *United States v. Martin*, 520 F.3d 87

---

[1] *See* Plea Agreement at D.E. 89.
[2] Undersigned counsel hopes to resolve restitution figures with the victim's counsel prior to the scheduled sentencing hearing in this case, but submits that – consistent with the government's position – should the parties not have final restitution figures by the sentencing hearing, that a further date for restitution hearing be set within 90 days of the date of sentencing.

(1st Cir. 2008); *United States v. Rodriguez*, 527 F.3d 221 (1st Cir. 2008).

Finally, Mr. Grubert requests that this Honorable Court recommend to the Bureau of Prisons ("BOP") that he be designated to a facility, commensurate with this security level, in Texas – specifically, FMC Carswell or FCI Seagoville, to permit him to engage in sex offender treatment[3] and to be closer to the only community he has ever known.

## A SENTENCE OF 180 MONTHS IS SUFFICIENT BUT NOT GREATER THAN NECESSARY TO EFFECTUATE THE SENTENCING GOALS OF 18 U.S.C. § 3553(a).

The United States Supreme Court, recognizing the immense discretion afforded to sentencing judges, advised that sentencing courts should "consider every convicted person as an individual and every case as a unique study in human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Koon v. United States*, 518 U.S. 81, 113 (1996). The First Circuit stressed that sentencing determinations require a "more holistic inquiry" than simply plugging numbers into a guidelines calculation, and that, at least in the federal context, the federal statutory factors to be considered are "a tapestry of factors, through which runs the thread of an overarching principle [of parsimony]." *See United States v. Yonathan Rodriguez,* 527 F.3d 221, 228 (1st Cir. 2008), citing *Kimbrough v. United States,* 562 U.S. 85, 101 (2007). That overarching principle is to "impose a sentence sufficient but not greater than necessary." *Id*. In reaching a decision on what constitutes an appropriate sentence, the court should "consider all the relevant factors" and "construct a sentence that is minimally sufficient to achieve the broad goals of sentencing." *Id.*

As explained herein, an above-guideline sentence of 180 months, followed by a period

---

[3] *See* Federal Bureau of Prisons, Custody & Care: Sex Offenders, listing FMC Carswell and FCI Seagoville, both in Texas, as two of the nine BOP facilities that offer sex offender treatment: https://www.bop.gov/inmates/custody_and_care/sex_offenders.jsp

of supervised release of five years with the special substance use and sex offender treatment and registration conditions proposed by the Probation Department, appropriately reflects the nature and seriousness of the offense and Mr. Grubert's personal history, and provides just punishment. Should the Court accept Mr. Grubert's plea and impose the jointly-recommended sentence, his waiver of appellate rights – both with respect to his guilty plea and the 15-year sentence – become self-executing under the plea agreement, and the disposition effectively becomes final. The finality of his conviction – and the certainty of a lengthy sentence for serious conduct – is another factor weighing in favor of the parties' jointly recommended disposition.

## I. Sentencing Guidelines

While courts must consider the sentencing guidelines, the Supreme Court has held that the Court may not presume that a guideline sentencing range is reasonable, and Congress has required federal courts to impose the least amount of imprisonment necessary to accomplish the purposes of sentencing as set forth in 18 U.S.C. § 3553(a). *Kimbrough*, supra; *Gall v. United States*, 552 U.S. 38 (2007).

Pursuant to the plea agreement in this case, Mr. Grubert agrees that because he has pleaded guilty to violating 18 U.S.C. § 2251(d)(1)(A), the offense level is calculated under U.S.S.G. § 2G2.2 and that his total offense level, accounting for acceptance of responsibility, is properly calculated at 32. Specifically, his base offense level under § 2G2.2(a)(2) is 22. Two-level enhancements apply, respectively, where the offense involved material depicting a pre-pubescent minor, distribution, and use of a computer (*see* § 2G2.2(b)(2); 2G2.2(b)(3)(F); 2G2.2(b)(6); a four-level enhancement applies under § 2G2.2(b)(4)(B); and a three-level enhancement applies for number of images under § 2G2.2(b)(7)(B). With these enhancements, Mr. Grubert's adjusted offense level is 35. With a 3-point reduction for acceptance of

responsibility, that brings the total offense level to 32 as calculated by both the parties in the plea agreement and by Probation in the Presentence Report. *See* PSR ¶ 45.

With no prior record of convictions – and no prior history of any arrests or charges whatsoever – Mr. Grubert agrees with Probation's calculation of his criminal history score (zero), and his Criminal History Category (I). His resulting sentencing guideline range is 121-151 months, *see* PSR ¶ 71, but because the applicable mandatory minimum sentence of 180 months exceeds the sentencing guideline range here, the guideline term of imprisonment is 180 months. *See id.*; *see also* U.S.S.G. § 5G1.1(b). In sum, the parties' joint guideline calculation is accurate, and the parties' binding disposition recommendation rightfully exceeds the sentencing guideline range by virtue of the applicable mandatory minimum sentence in this case.

Notably, the parties' joint recommendation of 180 months falls squarely in the middle of what the sentencing guideline range would be *after trial*. Specifically, had Mr. Grubert not accepted responsibility and not received a 3-level reduction, his total offense level would have been 35, and at Criminal History Category I, his sentencing guideline range would be 168-210. It is a testament not just to the applicable minimum mandatory sentence, but to the seriousness with which the parties take the disposition of this case, that they jointly recommend a 180-month sentence. Mr. Grubert submits that the de facto upward departure represented by the parties' above-guideline sentencing recommendation of 180 months accurately and adequately reflects the applicable sentencing guideline range, the seriousness of the offense, its nature and circumstances, and the relevant conduct described in the Presentence Report.

II.   **A 180-Month Sentence is Just and No More Than Necessary to Achieve the Goals of Sentencing.**

At the outset, Mr. Grubert accepts completely that his conduct was criminal and harmful to the victim in this case, and he does not dispute that he deserves punishment. Indeed, for over

the last three years, he has truly come to terms with the gravity of his offense and has already begun to suffer the consequences. In accepting responsibility and in joining the government in a recommendation of a sentence of imprisonment of 180 months, Mr. Grubert asks this Court to impose not just the lengthiest term of incarceration in his life, but the first and only term of imprisonment he has ever served.

The offense for which Mr. Grubert will stand convicted involved the online posting of one link that led to one video of child pornography and one image of child pornography, which itself was a set of stills from that same one video. He made the posting in a private chat room within Website A, a Tor hidden service site. At the time the posting was made on June 14, 2020, there was a total of six (6) users in the private chat room, including both Mr. Grubert and the undercover agent with the Department of Homeland Security. Of course, neither the fact that only a single video depicting a single victim was shared, nor the fact that seemingly only four users, aside from Mr. Grubert and the undercover agent, had access to the link mitigates the seriousness of his conduct or the harm to the victim. Though many offenders who are sentenced to equal or similarly lengthy terms of imprisonment are often convicted of production of child pornography and/or contact offenses, Congress – in fixing a 15-year minimum mandatory penalty for advertising child pornography in violation of 18 U.S.C. § 2251(d)(1)(A) – has codified the severity of both crime and punishment for even those who *seek out* child pornography through similar means. Thus, although Mr. Grubert's conduct involved neither contact offenses nor production of child pornography, the parties' joint recommendation of 180 months – the minimum mandatory sentence here – adequately reflects both the conduct of conviction, the relevant conduct laid out in the Presentence Report, and the intended punishment

set forth by Congress.[4]

With respect to specific deterrence, pursuant to 18 U.S.C. § 3553(a)(2)(B), this has been Mr. Grubert's first and only time spent in jail, and the experience has been harrowing. He was arrested and first incarcerated at the height of the COVID-19 pandemic in mid-2020, and he has been subjected to countless lockdowns, restrictions on movement and association, interruptions in programming, and ongoing scarcity of resources and staffing at the Plymouth Jail. Fearing the worst as the virus took hold of a jail some 2,000 miles from the only community he knows and the only people who would be willing to visit him, he has spent the last 3+ years in virtual isolation and despair. As explained below, he has essentially lost every vestige of his former life and has already begun paying the consequences for his choices and conduct. Having seen many probationers returned to jail for violations of supervised release and registration obligations, he firmly knows and understands both the importance and seriousness of complying with the terms of his supervised release and sex offender registration. This exposure and this experience have already had an enormous deterrent effect on him, and a 180-month sentence for the conduct of conviction in this case sends a very strong message to other would-be advertisers of child pornography about the severe consequences for this conduct.

Moreover, where Mr. Grubert will be on supervised release for five years, the overall sentence would serve the purposes of rehabilitation and protection of the public, and his supervised release term would constitute additional punishment. When Mr. Grubert is released from prison, he will be subject to both the sex offender registry laws and stringent monitoring

---

[4] Though Mr. Grubert acknowledges the broad latitude afforded to courts under 18 U.S.C. § 3661 to *consider* issues and materials at sentencing, he asks this Honorable Court to give lesser weight to the uncharged conduct detailed in the "Community Impact Letters" from two unnamed members of Mr. Grubert's family. One letter does not articulate any criminal allegations whatsoever, and the other appears to refer to uncharged conduct from some two decades ago which is alleged to have occurred when Mr. Grubert himself was a child.

by probation, all of which will continue to protect the public and mitigate his risk of recidivism. *See* 18 U.S.C. § 3553(a)(2)(C).

A 180-month sentence will also afford meaningful and effective treatment as required by 18 U.S.C. § 3553(a)(2)(D). Mr. Grubert will be able to participate in treatment programs in the Bureau of Prisons, including sex offender treatment and mental health treatment, and his request for a recommendation to FMC Carswell or FCI Seagoville demonstrates his willingness to engage in that treatment. His continued sex offender treatment and registration will be mandated for the five years that he will be monitored in the community by U.S. Probation. His anticipated treatment participation will reduce his risk of recidivism.[5]

Finally, for Mr. Grubert, this conviction will follow him the rest of his life – well beyond the term of his imprisonment. It will be significantly harder for Mr. Grubert to find a job, to find his own apartment, and to reintegrate into society upon his release. He likely will be subject to harassment, and at greater risk of violence, both in prison and afterwards in the community. As several courts have recognized, collateral consequences of conviction, such as registration as a sex offender, are relevant to the "need" for the sentence imposed to reflect just punishment. *See, e.g., United States v. Garate*, 543 F.3d 1026, 1028 (8th Cir. 2008) (district court's consideration of the lasting effects of being required to register as a sex offender is appropriate mitigating factor in sentencing); *United States v. Autery*, 555 F.3d 864, 875 (9th Cir. 2009) (characterizing sex offender registration as "a punishment of lifelong significance (which can cause the listed person to become so socially ostracized that he has difficulty living in many communities)").

---

[5] *See* U.S. Dep't of Justice, Center for Sex Offender Management, *Understanding Treatment for Adults and Juveniles Who Have Committed Sex Offenses* 10 (2006); *See* U.S. Sent'g Comm'n, *Report to the Congress: Federal Child Pornography Offenses* (2012) ["*Child Porn Report*"] at 278 &n.31(quoting Center of Sex Offender Management, The Comprehensive Approach to Sex Offender Management 5 (2008)) (finding that appropriate treatment interventions are associated with very significant lower rates of recidivism).

These collateral consequences of conviction – though civil and not intentionally punitive in nature – should be considered in the calculus of a sentence's reasonableness and parsimony. This is especially true where the "collateral consequences of child pornography convictions are extreme, perhaps more extreme in some ways than any other form of criminal activity… It is a crime of extreme shame and humiliation." *United States v. Bhavsar*, 10-CR-40018-FDS, ECF No. 56, Excerpt Transcript of Sentencing at 8.

### III. Mr. Grubert's History and Characteristics Also Support a Sentence of 180 Months.

Mr. Grubert's "history and characteristics" are a required consideration under 18 U.S.C. § 3553(a)(1) in determining what sentence is "sufficient but not greater than necessary." The information contained in the Presentence Report, which thoroughly describes his background and relevant characteristics, depicts a man who, by virtue of his offending, has lost everything in his life. Though he is still loved and supported by his parents, his brother, and a few friends, his wife divorced him and ceased all communications with him. PSR ¶ 57. His grandfather, to whom he was very close, passed away in Texas while Mr. Grubert has been detained in this case. PSR ¶ 56. For someone who grew up in – and stayed near – a very small town, Mr. Grubert feels the loss of community and familial support acutely and recognizes that in accepting responsibility and recommending a 180-month sentence, he is likely to further alienate himself from family and his community.

All told, Mr. Grubert's childhood was rather sheltered – in his words, he had "an isolationist upbringing with insular world views." *Id.* at ¶ 55. Indeed, the farthest he has ever traveled in his life was to the Wyatt Detention Facility in Rhode Island, and then the Plymouth Jail. Raised in a deeply religious family, he was home schooled for elementary and high school, and was largely confined to his room. *Id.* at ¶¶ 55, 65. When he was 19 years old, he completed

8

a program at Texas Bible Institute, and later attended Texas State Technical College. *Id.* at ¶ 65. He struggled, and continues to struggle, with dyslexia, a learning disorder that involves difficulty reading and processing language. *Id.*

He began drinking alcohol in earnest when he was 21, and what began as social consumption on the weekends escalated into heavier bouts of intoxication with hard alcohol, prompted by significant traumatic events in his life. *Id.* at ¶¶ 56, 64. At times, he has experienced feeling intensely suicidal, feelings which have only exacerbated in the aftermath of his arrest in this case. *Id.* at ¶¶ 56, 60.[6] His stress, both before his incarceration and due to issues related to his incarceration, has manifested in what appears to be an eating disorder, from which he has suffered and continues to suffer physical symptoms. *Id.* at ¶ 59.

A few months after he was arrested in this case, his now ex-wife, pregnant with their child, cut off all communication and initiated divorce proceedings in Texas. *Id.* at ¶ 57. He noted for Probation – contrary to the government's assertion that he discussed "frustration with the lack of access to his daughter" – merely that his daughter was born after he was arrested and that he has not met her. *Id.*; Gov. Sent. Memo at 11. Nonetheless, the loss of his marital relationship – though some might say entirely justified and foreseeable given his offense conduct here – has been very painful and has contributed to his feelings of isolation since his arrest. It is in this way that he began paying, in a very personal, meaningful way, for the consequences of his actions and conduct long before conviction in this case.

Now 35 years old, Mr. Grubert faces the prospect of release from federal prison in his

---

[6] Though the government asserts that his disclosure of his now ex-wife's mental health issues was somehow untoward or inappropriate, (Gov. Sent. Memo at 11), such disclosure was made in response to Probation's interview questions and was relevant to Mr. Grubert's account of their relationship and his explanation regarding the stress he in turn experienced. As the PSR is a confidential document, such disclosure would not have been made public had the government not referenced it in their memorandum.

mid- to late-40s, and he will enter a vastly different world from the one he left in July 2020 when he was arrested. Knowing that he will need to rebuild his life from scratch, with much less support from family and friends than he has ever had, he is committed to living a law-abiding life.

Finally, Mr. Grubert's history and characteristics make him a low risk to re-offend upon his release. By the time he will have completed the incarcerated portion of his sentence in this case, he will be in an age cohort that has reduced levels of sexual recidivism. According to the United States Sentencing Commission, recidivism rates (re-arrest, re-conviction, and supervised release violation rates) generally "decline relatively consistently as age increases," from 35.5% for offenders under age 21, down to 12.7% for offenders age 41 to 50, and down to 9.5% for offenders over age 50.[7] For offenders in both Mr. Grubert's age group at release and criminal history category (I), the recidivism rate drops even lower, to 6.9%.[8] For sex offenders, specifically, recidivism declines with age, with age being one of the most robust predictive factors for decreased risk of sexual recidivism.[9]

### IV. Mr. Grubert's Indigency Makes Other Financial Penalties and/or Fines Inappropriate in this case.

Mr. Grubert submits that neither a fine nor the applicable special assessments, pursuant respectively to 18 U.S.C. § 3014(a)(3) and 18 U.S.C. § 2259A, are appropriate in this case.

Specifically, Mr. Grubert is indigent and has been deemed so by the Court by virtue of undersigned counsel's appointment. He has been detained for over the past three years in pretrial

---

[7] U.S. Sent'g Comm'n, *Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines*, at 12 (2004), available at: https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2004/200405_Recidivism_Criminal_History.pdf
[8] *Id.*, at pg. 28, Exhibit 9.
[9] *See* R.K. Hanson, *Recidivism and Age: Follow-up Data from 4,673 Sexual Offenders*, 17 J. Interpers. Violence 1046, 1054 (2002).

custody. He has no income and has significant personal debts, which include an outstanding balance of past due child support (which only began to accrue after his arrest, and which will continue to accrue for the entirety of his term of imprisonment). *See* PSR ¶ 68.

Mr. Grubert further submits that his potential future earnings are minimal, and are in any event to be offset by the likely garnishment of any wages due to his child support obligations. If the Court is inclined to evaluate Mr. Grubert's future earning capacity, however, he would still be deemed indigent. Prior to his arrest, Mr. Grubert worked as a marketing coordinator for a local resort and earned just over $2000/month, with an hourly rate of $12.88. PSR ¶ 66. Calculating that very simply, at $12.88/hour, for 40 hours/week, for 52 weeks/year, Mr. Grubert's *gross* income is only $26,790.40. A person who makes that salary is still indigent. After his 180-month sentence, Mr. Grubert will undoubtedly be older and will have a significant gap in employment, and as such his earning and working capacity will be substantially reduced. This is to say nothing, of course, of his ability to seek and maintain employment after serving 15 years and being under supervision after conviction of a sex offense. For these reasons, Mr. Grubert submits that he is indigent and unable to afford a fine or the special assessments otherwise applicable in this case and asks this Honorable Court not to impose them.

## **CONCLUSION**

The parties' jointly recommended sentence of 180 months appropriately reflects the seriousness of the offense, its nature and circumstances, and the relevant conduct described in the Presentence Report. Certainly, protection of the public and the victim in this case would be achieved for the period of incarceration during which he is incapacitated from society, for the term of his supervised release, and for the extended period of his registration. For the foregoing reasons, the Court should impose the jointly proposed sentence of 180 months followed by five

years of supervised release.

|  |  |
|---|---|
| DATED: 11/1/23 | Respectfully submitted,<br>NEAL GRUBERT<br>By His Attorney, |

*/s/ Sandra Gant*
Sandra Gant
BBO #: 680122
Federal Defender Office
51 Sleeper Street, Fifth Floor
Boston, MA 02210
Tel: 617-223-8061

CERTIFICATE OF SERVICE

    I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on November 1, 2023.

*/s/ Sandra Gant*
Sandra Gant